[Sac. No. 1950.    Department Two.—September 23, 1912.]

M. INGLIN et al., Petitioners, v. ELI SNIDER et al., as and Constituting the Board of Supervisors of the County of Yolo, State of California, Respondents; T. F. LAUGENOUR et al., Interveners.

RECLAMATION DISTRICT—LAND CAPABLE OF INDEPENDENT RECLAMATION —RIGHT TO ESTABLISH INDEPENDENT DISTRICT NOT ABSOLUTE—DISCRETION OF BOARD OF SUPERVISORS.—The owners of a compact body of land within a reclamation district, in which the lands have not been reclaimed, who petition to have their property set off from such district and established as an independent district, are not entitled as of right, under section 3481 of the Political Code, to an order of the board of supervisors permitting them to separate their land from the old district, merely upon demonstrating that such segregation is possible, without reference to the effect of such action on the remaining lands in the district or the cost of independent reclamation of the tract sought to be set aside. Their petition is sub-

ject to the discretion vested in the board by section 3449 of that
code, and if in the exercise of such discretion the supervisors de-
termine that the proposed excision of lands from the district already
formed would increase the cost of reclamation to all parties con-
cerned or make the work of protection of their lands less effective,
they have the right to reject the application.

ID.—RECLAMATION DEFINED—INDEPENDENT DISTRICT CANNOT BE CREATED
FROM DISTRICT ALREADY RECLAIMED.—The word "reclamation," as
used in such sections means "practical protection from probable dan-
gers," and if the district could be properly classed under the evi-
dence as one in which the land had been so reclaimed, the petitioners
are entitled to no relief under section 3481 of that code.

ID.—LANDS NOT CAPABLE OF INDEPENDENT RECLAMATION—CONFLICT OF
EVIDENCE—DETERMINATION OF BOARD.—In a proceeding in *man-
damus* to compel the board of supervisors to approve the plan of
the petitioners for a segregation of their lands, the determination
of the board that such lands were not capable of independent recla-
mation will not be interfered with, when the evidence respecting
that question is conflicting.

ID.—INSPECTION OF LAND BY SUPERVISORS.—An inspection of such lands,
made by the board in person, is the taking of evidence on such
question, and sufficient to support their determination that the lands
were incapable of independent reclamation.

APPEAL from a judgment of the Superior Court of Yolo
County. Wm. M. Finch, Judge presiding.

The facts are stated in the opinion of the court.

E. A. Bridgford, W. W. Davidson, Hudson Grant, and Mor-
rison, Dunne & Brobeck, for Appellants.

A. C. & H. L. Huston, for Respondents.

Charles W. Thomas, and Charles W. Thomas, Jr., for In-
terveners and Respondents.

MELVIN, J.—Petitioners are the owners of land within
Reclamation District No. 730. Shortly after the first assess-
ment-list was returned to the district these petitioners filed
with the board of supervisors of Yolo County a petition ask-
ing that their lands be organized into an independent recla-
mation district. This petition having been denied by the
board of supervisors, the petitioners applied to the superior
court for a writ of mandate requiring the supervisors to hear

and determine their petition.   A demurrer having been sustained to the petition for a writ of mandate an appeal was taken to this court and it was here determined that the pleading was sufficient.   (*Inglin* v. *Hoppin,* 156 Cal. 484, [105 Pac. 582].)   Subsequently, upon a petition filed long after that considered in *Inglin* v. *Hoppin,* but altogether similar to it, the board of supervisors, after a hearing, denied the prayer of petitioners on July 12, 1910.   Whereupon they applied to the superior court of Yolo County for a writ of *mandamus* directing the board to set aside its order and to make another order approving the plan of separation of petitioners' lands from the district.   The court gave judgment denying the prayer of the petition for mandate and from such judgment this appeal is taken.

The position of the petitioners is that their showing before the board of supervisors established without contradiction their right to have their property cut off from Reclamation District No. 730 and that, therefore, they are entitled to a writ of mandate enforcing their wish in that regard.   The court below, however, determined that there was a substantial conflict in the evidence given on the hearing before the supervisors and that it was therefore powerless to interfere with the legal discretion of the board duly exercised and based upon evidence addressed to that body.   Appellant contends that when the owners of a compact body of land within a reclamation district, in which the lands have not been reclaimed, desire to have their property set off from such district, they need only demonstrate that such segregation is possible and thereupon it is made the duty of the board of supervisors to grant their request, without reference to the effect of such action on the remaining lands in the district or the cost of independent reclamation of the tract thus sought to be set aside.   They insist that without conflict the evidence demonstrates two propositions.   The first of these is that the lands of Reclamation District No. 730 had not been reclaimed when petitioners sought to secede from it, and the second is that having demonstrated the fact that their land may be independently reclaimed, they are entitled, of right, to withdraw their property from the district.   Even if we concede the first of these postulates, it would not necessarily follow that the board of supervisors would be compelled to permit

petitioners to separate their land from the old district. If the board of supervisors found that the old district, though not completely reclaimed was somewhat protected and the whole work of reclamation could be pursued more economically for all persons concerned by adhering to the original plans rather than by dismembering the district, then the board would be clothed with discretion to deny the requested segregation. The petitioners must, under the very terms of section 3481 of the Political Code comply with section 3446 of the same code. In other words, they stand in practically the same position before the board as those seeking to form a new district from lands not theretofore included in an old one, except that additionally they must "show to the board of supervisors that said body of lands is capable of an independent reclamation." Their petition would be subject to the provisions of section 3449 of the Political Code which requires, among other things, that "if it be shown that any land has been improperly included in or excepted from the proposed district, they must re-form the district in such respects in their order." Now, if in the effort to organize District No. 730 these lands had been omitted from the petition, the supervisors in the exercise of their discretion might have re-formed the district so as to include such lands; and it follows that a like discretion is vested in the board when an application is made under section 3481. If in the exercise of their discretion the supervisors should determine that the proposed excision of lands from a district already formed would increase the cost of reclamation to all parties concerned or make the work of protection of their lands less effective, they would have a perfect right to reject petitioners' application. In the case at bar there was a conflict of evidence regarding the question whether or not the lands in District No. 730 had been reclaimed before appellants made their request of the board of supervisors. It is true that the engineer of the district had named a large sum of money as being necesssary for the purpose of completing the reclamation of the lands in the district. The great flood of 1909 had caused levees above District No. 730 to break and the waters to flow upon the lands of said district over the ridge at Knights Landing which at seasons of ordinary high water was of sufficient elevation to protect the district on its northerly side. It was in view of

the extraordinary conditions which developed in 1909 that the plan of reclamation was amended to fortify the district against all possible future danger; but there was evidence which was sufficient to support a determination by the board of supervisors that at the time of the hearing the district was capable of protecting the lands situated therein from ordinary floods. The learned judge of the superior court who presided at the hearing of this case defined "reclamation" as "practical protection from probable dangers." This is an apt definition. The word cannot mean absolute protection from all dangers because such a thing is scarcely possible. If, therefore, the district could be properly classed under the evidence as one in which the land had been reclaimed, then petitioners are entitled to no relief under section 3481 of the Political Code.

We cannot say that there was no conflict of evidence regarding the question whether or not the land of petitioners was capable of independent reclamation. Witnesses for petitioners testified that it was, and at least one witness for the respondents said that it was not. Thereupon the board of supervisors inspected the premises. This was the taking of evidence (*People* v. *Milner*, 122 Cal. 182, [54 Pac. 833]), and is sufficient in itself to destroy the contention that no conflict existed because, acting upon the evidence before it, the board of supervisors accepted the view that the lands of the petitioners were not capable of independent reclamation. We conclude, therefore, that the matter presented to the board of supervisors by petitioners having been decided upon sharply conflicting evidence, the superior court was justified, under familiar principles, in refusing to interfere with the action of the board.

The judgment is affirmed.

Henshaw, J., and Lorigan, J., concurred.